2023 IL App (1st) 220328

SIXTH DIVISION
September 29, 2023

No. 1-22-0328

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19 CR 06650 |
| CURTIS BAKER, | ) ) | The Honorable Michael R. Clancy, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.

Justices C.A. Walker and Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant Curtis Baker was convicted after a bench trial of unlawful use of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2018)), which was his fourth felony conviction to date. The trial court sentenced him to four years and six months with the Illinois Department of Corrections (IDOC).

¶ 2     On this direct appeal, defendant challenges, first, the sufficiency of the evidence against him. In order to be convicted of UUWF, a person must have a prior adult felony conviction. 720 ILCS 5/24-1.1(a) (West 2018). Defendant claims that the State failed to prove that the particular conviction that the State named in the indictment was an adult conviction because

defendant was only 17 years old at the time of that particular offense. Second, defendant claims that, as applied to him, the UUWF statute violates the second amendment under a new test, recently articulated by the United States Supreme Court, for laws that attempt to regulate the gun possession of "law-abiding citizens." *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ___, ___, 142 S. Ct. 2111, 2156 (2022) (the holding was limited to laws affecting "law-abiding citizens"); see also *Bruen*, 597 U.S. ___, 142 S. Ct. 2111 *passim* (the six justices in the majority repeated the phrase "law-abiding" 18 times in their majority and concurring opinions); *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.) (" '[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ***.' " (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008))). For the following reasons, we do not find these claims persuasive and affirm.

¶ 3                                         BACKGROUND

¶ 4        On April 20, 2019, defendant, then age 28, was arrested after officers observed him making what they believed to be a hand-to-hand drug transaction. When officers approached, defendant fled on foot. During the ensuing chase, officers observed defendant toss a gun, which they recovered shortly thereafter and which they found to be loaded.

¶ 5        On May 17, 2019, defendant was indicted for (1) UUWF, for possession of a gun, after "having been previously convicted of the felony offense of manufacturing and delivery of heroin, under case number 09 CR 0470201" (hereinafter, 201); (2) UUWF for possession of ammunition, after having been convicted of the same 201 offense; (3) aggravated unlawful use of a weapon (AUUW), for carrying a gun on a public street without a concealed-carry license; (4) AUUW, for carrying a gun on a public street without a firearm owner's identification

(FOID) card; (5) AUUW, for carrying an uncased and loaded gun without a concealed-carry license; and (6) AUUW, for carrying a gun without a FOID card. Counts III through VI stated that the State would seek to sentence defendant as a Class 2 offender, "in that he has been previously convicted of a felony, to wit" the 201 offense.

¶ 6        On January 12, 2022, defendant waived a jury trial, and the case proceeded to trial on the same day. In the defense's opening, counsel argued that officers "may or may not" have observed an object being thrown, that they lost sight of this object, and that, after detaining defendant two blocks later, they returned and found a gun in a high-crime area. Counsel argued that, because of the break in both time and custody, there was nothing linking this gun to defendant.

¶ 7        Officer D'Andre Sweezer testified to observing defendant making a suspected hand-to-hand drug transaction and to giving chase, during which he observed defendant toss a black gun over a fence into a residential front yard. Officer Sweezer's partner, Officer Zeman,[1] subsequently detained defendant. Officer Sweezer then "held on to" defendant, while his partner went back to retrieve the gun. After defendant was brought to the police station and advised of his rights, defendant stated that somebody on the block had given him the gun.

¶ 8        Officer Zeman testified that, after his partner, Officer Sweezer, exited their vehicle and approached defendant, defendant fled on foot. During the ensuing chase, Officer Zeman followed along, driving their vehicle. From their vehicle, Officer Zeman observed defendant toss a black gun into the front yard of a residence. Shortly thereafter, Officer Zeman exited his vehicle and pursued defendant on foot, eventually detaining him. After defendant was placed into custody, Officer Zeman returned to the fenced yard where the gun was tossed. Officer

_____

[1]Officer Zeman's first name is not provided in the trial transcript.

Zeman asked a woman at the residence to let him into the yard, and she unlocked the gate for him. The officer then seized the gun, which was a loaded black semi-automatic firearm.

¶ 9        After the officers testified, the parties agreed to a stipulation:

"ASSISTANT STATE'S ATTORNEY [(ASA)]: Your Honor, we seek to introduce People's No. 2, a certified copy of disposition of case number 09 CR 0470201 from the Clerk of the Circuit Court of Cook County, indicating that defendant was previously found guilty of manufacturing and delivery of heroin on March 24, 2009[,] and judgment entered.[2]

So stipulated?

DEFENSE COUNSEL: We will stipulate to that, judge. We ask that you just judge the facts as you have heard them.

THE COURT: Correct. I am not considering it for any other [purpose] than a proven element of the offense.

DEFENSE COUNSEL: Thank you, judge.

THE COURT: You're welcome."

¶ 10        After defense counsel thanked the court for considering the 201 conviction only as "a proven element of the offense," the State rested. The trial court then denied defendant's motion

---

[2]The presentence investigation report indicates that this 201case had two disposition dates. On March 24, 2009, defendant was sentenced to 24 months of probation. However, on March 27, 2010, the probation was terminated as unsatisfactory. On that same date, March 27, 2010, the trial court sentenced defendant to two years with IDOC for possession of a controlled substance in case number 09-CR-2255801. On January 12, 2022, after the trial court found defendant guilty, defense counsel asked that defendant remain out on bond. When the prosecutor noted that this was defendant's fourth conviction, defense counsel argued that the two 2009 prior convictions were really like one case. Counsel stated: "The two cases were run together. So, in our minds, it's like one conviction." The court asked, "run together, what do you mean by that." Counsel responded: "He was convicted at the same time in 2009. The sentencing ran together."

for a directed verdict. Defendant exercised his right not to testify, and the defense rested. After listening to closing arguments, the trial court stated that it found the officers "to be credible when they testified and [that] they corroborate each other." The trial court then found defendant guilty "as charged."

¶ 11    The presentence investigation report (PSI) indicated that defendant had two felony convictions in addition to the 201 offense named in the indictment. These two convictions were both for possession of a controlled substance: (1) case number 09-CR-2255801 had an arrest date of November 17, 2009, and (2) case number 11-CR-0899401 had an arrest date of May 9, 2011. The first case had a disposition date of January 27, 2010, and defendant served two years with IDOC; the second case had a disposition date of November 8, 2011, and defendant served 21 months with IDOC.[3] Defendant's birthdate, as stated in the PSI and conceded by defendant on appeal,[4] establishes that defendant was 18 years old or older on the dates of these two other felony convictions.[5]

¶ 12    On January 31, 2022, defendant filed a posttrial motion for a new trial seeking a new trial on the ground, among others, that "[t]he State failed to prove defendant guilty of the charge of UUW Felon beyond all reasonable doubt." At the start of the sentencing hearing on March 2, 2022, the court denied defendant's posttrial motion,

¶ 13    At sentencing, on March 2, 2022, the trial court stated: "I found him guilty on all charges." The court then observed that all the counts were Class 2 felonies, and asked the ASA

---

[3]In the PSI, the 21 months was added in pen. At sentencing, the trial court asked what the sentence was for that offense, and the ASA responded that it was 21 months. The trial court stated that it was amending the PSI to reflect that fact, and defense counsel indicated that he had no objection to that. Defense counsel stated that he had "nothing to add or subtract to the PSI."

[4]Defendant's brief to this court states defendant's birthdate, and it states it as the same date stated in the PSI.

[5]The PSI also indicated two prior juvenile adjudications on drug charges.

what the State's position was on merger. The ASA responded: "Our position will be that he be sentenced as to Count 1 and that Counts 2 through 6 would merge." Defense counsel said that he agreed with that. After observing that the sentencing range for a Class 2 felony was 3 to 14 years, the court merged counts II through VI with count I and sentenced defendant on count I to 4½ years with IDOC. Also, at the same hearing, defendant filed a motion to reconsider sentence, which the court denied. In denying the motion, the court stated: "This is an individual who has three prior felony convictions." Per defense counsel's request, the trial court recommended a drug rehabilitation program for defendant. On March 2, 2022, defendant filed a timely notice of appeal, and this appeal followed.

¶ 14                                                    ANALYSIS

¶ 15                                        I. Sufficiency of the Evidence

¶ 16          On this appeal, defendant argues, first, that the prior offense stated in the indictment was not a qualifying predicate for a UUWF conviction, and he asks this court to reverse his conviction.

¶ 17          In his brief to this court, defendant acknowledges (1) that the 201 "case was under the jurisdiction of the adult criminal court under the law in effect at the time" and (2) that defendant "was convicted of this offense as an adult on March 24, 2009." However, defendant argues that the 201 case does not support a UUWF conviction because the UUWF statute requires that a defendant " 'has been convicted' " of an adult felony (720 ILCS 5/24-1.1(a) (West 2018)), and the charge in the 201 case would not now be subject to an automatic or presumptive transfer to adult criminal court.

¶ 18                                        A. Standard of Review

¶ 19    Generally, when considering a challenge to the sufficiency of the evidence at trial, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Aljohani*, 2022 IL 127037, ¶ 66.

¶ 20    However, in this appeal, defendant argues that the key facts are not in dispute and the only question is whether those facts satisfy the elements of the UUWF statute. Defendant is correct that the key fact regarding his claim is undisputed, and the State does not argue otherwise. It is undisputed that, when defendant committed the charged predicate offense, he was only 17 years old.

¶ 21    Thus, the issue before us is one of statutory interpretation, and the interpretation of a statute presents a question of law that we review *de novo*. *People v. Howard*, 2016 IL App (3d) 130959, ¶ 18 ("applying the undisputed facts to the language of the statute to determine whether the essential elements have been proven *** is a question of law that we review *de novo*"); *People v. Chirchirillo*, 393 Ill. App. 3d 916, 921 (2009) ("Because the relevant facts are uncontested and the issue concerns whether these uncontested facts establish the elements of [the offense], we review *de novo* defendant's claim."); *People v. Anderson*, 364 Ill. App. 3d 528, 532 (2006) (*de novo* review applies "not just to the question of whether a statute was properly construed but also to whether the statutory elements were satisfied by the undisputed facts").

¶ 22                                    B. Forfeiture

¶ 23    The State argues that defendant forfeited his first claim for our review by failing to object in the court below and further waived it by stipulating to this element of the offense. However, forfeiture is a limit on the parties and not the reviewing court, and we may decline

to find forfeiture where necessary to obtain a just result and preserve the integrity of the judicial process. *People v. Phillips*, 2022 IL App (1st) 181733, ¶ 156; *People v. Holmes*, 2016 IL App (1st) 132357, ¶ 65. Finding a defendant guilty of an offense that was not an offense at the time that he committed it would adversely affect the integrity of the judicial process. See *People v. Melecio*, 2017 IL App (1st) 141434, ¶ 64 (forfeiture did not apply to a violation of the one-act, one-crime rule); see also *People v. Miles*, 2020 IL App (1st) 180736, ¶ 8 (The appellate court found that defendant could challenge Class X sentencing based on a conviction committed while a minor because: "A sentence that is not statutorily authorized affects a defendant's substantial rights and is reviewable as second prong plain error.").

¶ 24                                C. Statutory Construction

¶ 25        "With statutory construction, our primary goal is to ascertain the legislat[ors'] intent, and the best indication of their intent is the plain and ordinary meaning of the words they chose to use." *People v. Miles*, 2017 IL App (1st) 132719, ¶ 25; *State of Illinois ex rel. Pusateri v. Peoples Gas Light & Coke Co.*, 2014 IL 116844, ¶ 8 (citing *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 23). Where the language is plain and unambiguous, we apply the statute without resort to further aids of statutory interpretation. *In re Lance H.*, 2014 IL 114899, ¶ 11; *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395 (2003); *Maschek v. City of Chicago*, 2015 IL App (1st) 150520, ¶ 44 ("If the statutory language is clear, we must apply it, without resort to any aids of statutory construction.").

¶ 26        In the case at bar, defendant was convicted under section 24-1.1(a) of the Criminal Code of 2012 (Code) which provides, in relevant part:

> "It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section

24-1 of this Act or any firearm or any firearm ammunition if the person has been *convicted* of a felony under the laws of this State or any other jurisdiction. (Emphasis added.) 720 ILCS 5/24-1.1(a) (West 2018).[6]

The word "convicted," used in the above-quoted statute, requires a finding of guilt and a sentence imposed in an adult criminal court, and it does not include a juvenile adjudication. *People v. Dawson*, 2022 IL App (1st) 190422, ¶ 22; *People v. Taylor*, 221 Ill. 2d 157, 170-71 (2006) (a juvenile adjudication is not a prior criminal conviction for the purpose of criminal statutes requiring a prior conviction as an element of the offense).

¶ 27 Since the State has the burden to prove the elements of the statute beyond a reasonable doubt, the burden of proof is on the State to prove, beyond a reasonable doubt, that the defendant had a qualifying adult conviction. *Dawson*, 2022 IL App (1st) 190422, ¶¶ 27 46. "The burden is not on the defendant to prove that the convictions were juvenile proceedings." *Dawson*, 2022 IL App (1st) 190422, ¶ 46.

¶ 28 It is undisputed that defendant did have a qualifying adult conviction—two of them, in fact. But, of the three possible choices, that probably looked pretty much the same at a surface glance for purposes of charging, defendant argues, in essence, that the State picked the wrong one—the earliest one—which led to this appeal. Defendant argues that, "[u]nder current law, as a 17-year-old,[7] [defendant] would have been tried and adjudicated as a juvenile" and would not have received an adult felony conviction for this conduct.

---

[6]Although we quote from the 2018 statute, which would have been in effect at the time of defendant's 2019 offense, there has been no change in the quoted language from 2018 to the present day.

[7]At the time of his arrest for the 2009 case, defendant was a month and a half short of his eighteenth birthday.

¶ 29        However, in making this argument, defendant asks us, first, to overlook his forfeiture in failing to object in the court below, his stipulation to this element of the offense *and* his two prior qualifying adult convictions. In light of his two prior qualifying adult convictions, we simply cannot find that the integrity of our system requires us to overlook his forfeiture and stipulation.[8] See *Phillips*, 2022 IL App (1st) 181733, ¶ 156; *Holmes*, 2016 IL App (1st) 132357, ¶ 65.

¶ 30        To excuse both the forfeiture in failing to object and the waiver by stipulation, defendant argues that these actions prove the ineffectiveness of his trial counsel. To determine whether a defendant was denied his sixth amendment right to effective assistance of counsel, courts apply the familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Albanese*, 104 Ill. 2d 504, 526 (1984) (adopting *Strickland*). Under *Strickland*, a defendant must show both (1) that his attorney's actions constituted errors so serious as to fall below an objective standard of reasonableness and (2) that, absent these errors, there was a reasonable probability that the outcome of the proceeding would have been different. *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 71. To prevail on an ineffectiveness claim, a defendant must satisfy both prongs of the *Strickland* test. *Carlisle*, 2015 IL App (1st) 131144, ¶ 73.

¶ 31        Defendant argues that his counsel acted unreasonably by stipulating. The transcript indicates that counsel stipulated not only to the conviction, but also to the conviction's satisfaction of the element of the offense. After stipulating to the conviction, counsel expressed

---

[8]In addition, defendant asked us to review his forfeited claim under the second prong of the plain error doctrine which permits reversal if a clear and obvious error challenged the integrity of the judicial process. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). For the reasons already explained in the text, we do not find that the integrity of our judicial system requires reversal here.

a concern that the type of offense might affect the court's fact-finding,[9] and the court assured him that would not happen. Defense counsel then thanked the court when the court stated that it would consider the conviction at issue only as "a proven element of the offense." Further, the ASA's reference to the stipulation indicates that this matter was previously discussed among counsel. While stipulating to the use of a nonqualifying offense as an element of the offense may have been serious error, we do not have to address whether any error falls below the objective standard of reasonableness where defendant's claim does not satisfy the second prong of *Strickland* regarding the probability that the outcome would have been different. In the case at bar, the State had two other qualifying offenses to choose from: case number 09-CR-2255801 and case number 11-CR-0899401. Thus, even if counsel had refused prior to trial to stipulate to this offense, the State could have used one of the other age-valid convictions to satisfy the element of the offense. Thus, defendant has failed to show a reasonable probability that the outcome would have changed based on these facts.

¶ 32                                    II. Second Amendment

¶ 33        Second, defendant argues that this court should reverse his conviction because the UUWF statute is unconstitutional as applied to him. A court of review should generally refrain from addressing constitutional questions unless the answers are essential to the disposition of a case (*i.e.*, where the case cannot be determined on other grounds). *People v. White*, 2011 IL 109689, ¶ 144. In the case at bar, we have already addressed defendant's nonconstitutional claim, thereby leaving his constitutional claim as the only claim left in the appeal.

---

[9]The police at trial had testified to observing defendant engage in a suspected hand-to-hand drug conviction, and the conviction at issue was for heroin. Counsel asked the court to "just judge the facts" based solely on the testimony it had just "heard" at trial.

¶ 34    While a facial challenge alleges that the statute is unconstitutional under any set of facts (*i.e.*, the specific facts of the case are irrelevant), an as-applied challenge alleges only that the statute violates the constitution as applied to the particular facts and circumstances in the instant case. *People v. Thompson*, 2015 IL 118151, ¶ 36.

¶ 35    Although defendant raises this issue for the first time on appeal, he cites a number of cases for the proposition that, generally, a challenge to the constitutionality of a statute may be raised at any time and that this proposition applies equally to as-applied claims as to facial claims. *E.g.*, *People v. Cleary*, 2013 IL App (3d) 110610, ¶ 35. The Illinois Supreme Court and the First, Second, and Third Districts of the Illinois Appellate Court have all so held. *People v. McCarty*, 223 Ill. 2d 109, 122-23 (2006); *People v. Burnett*, 2015 IL App (1st) 133610, ¶ 82; *People v. Emmett*, 264 Ill. App. 3d 296, 297 (1994) (First District); *People v. Martin*, 408 Ill. App. 3d 891, 895 (2011) (Second District); *Cleary*, 2013 IL App (3d) 110610, ¶ 35.[10] In response, the State notes that, in all the decisions defendant cites, the claim was then rejected on the merits.[11] However, this has to do with the strong presumption in favor of constitutionality that a statute enjoys and the high burden one faces in challenging it, as we discuss below.

¶ 36    A reviewing court starts with the presumption that a statute is constitutional, and the burden is on the party challenging it "to clearly establish any constitutional invalidity." *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 334 (2006). "The burden is a formidable one, and this court will uphold a statute's validity whenever it is reasonably possible to do so." *Allegis*,

---

[10]Defendant also cited in support the Illinois Supreme Court case of *People v. Holman*, 2017 IL 120655. However, in *People v. Wilson*, 2023 IL 127666, ¶ 42, the supreme court stated unequivocally: "*Holman* is overruled."

[11]The State also cited *Thompson*, but that case is completely inapposite because it concerns the special rules governing a section 2-1401 petition. *Thompson*, 2015 IL 118151, ¶ 31; 735 ILCS 5/2-1401 (West 2010).

223 Ill. 2d at 334. Whether a statute is constitutional is an issue that we review *de novo*. *Allegis*, 223 Ill. 2d at 334.

¶ 37    Defendant argues that his conviction is unconstitutional under the second amendment, pursuant to a United States Supreme Court case decided last year, namely, *Bruen*, 597 U.S. ___, 142 S. Ct. 2111. The problem with defendant's argument is that *Bruen* just does not apply to him. The *Bruen* Court could not have been more clear that its newly announced test applied only to laws that attempted to regulate the gun possession of "law-abiding citizens," and not felons like defendant. *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2156 (the holding was limited to laws affecting "law-abiding citizens"). Just in case a reader missed the first time that the court said it, the court repeated it 18 times. *Bruen*, 597 U.S. ___, 142 S. Ct. 2111 *passim* (the six justices in the majority repeated the phrase "law-abiding" 18 times in their majority opinion and their concurrences). Further, Justice Kavanaugh in his concurrence quoted an earlier case that stated: " '[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ***.' " *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.) (quoting *Heller*, 554 U.S. at 626-27)). Justice Kavanaugh's concurrence was joined by Chief Justice Roberts, and they both joined the six-justice majority opinion. Based on the plain, clear, and repeated language of the justices in the majority, defendant is simply outside the box drawn by *Bruen*.

¶ 38    After this appeal was fully briefed, we granted defendant's motions to cite two more cases as additional authority. The recent Third Circuit Court of Appeals case of *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (*en banc*), does not cause us to reconsider our decision. In *Range*, the Third Circuit found that the second amendment protection discussed in *Bruen* did reach those with only a misdemeanor conviction. *Range*, 69 F.4th at 98. First, the

13

opinion is not binding upon us. Second, the three concurring judges stressed that nothing prevented legislatures from disarming felons, such as defendant in the case at bar. *Range*, 69 F.4th at 110 (Ambro, J., concurring, joined by Greenaway Jr. and Montgomery-Reeves, JJ.) ("Congress may disarm felons" due to the long-standing prohibitions on the possession of firearms by felons). Lastly, the *Range* holding, which is limited to misdemeanor convictions, does not aid defendant, who is a four-time convicted felon.

¶ 39　　　　We also granted defendant's motion to cite *United States v. Bullock*, No. 3:18-CR-165-CWR-FKB, 2023 WL 4232309, ___ F. Supp. 3d ___ (S.D. Miss. June 28, 2023), *appeal filed*, No. 23-60408 (5th Cir. July 31, 2023). We do not find *Bullock* persuasive. First, it is a yet-to-be-published order by a federal district court where an appeal is now pending. Second, the order begins by criticizing the United States Supreme Court, accusing it of "cherry-picking briefs," for example. *Bullock*, 2023 WL 4232309, *2 (the United States Supreme "Court continues to engage in 'law office history'—that is, history selected to 'fit the needs of people looking for ammunition in their causes' "). Thus, neither case cited as additional authority dissuades us from our finding that *Bruen* does not apply to or aid defendant.

¶ 40　　　　　　　　　　　　　　　　CONCLUSION

¶ 41　　　　For the foregoing reasons, we do not find defendant's claims persuasive and affirm.

¶ 42　　　　Affirmed.

*People v. Baker*, 2023 IL App (1st) 220328

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CR-06650; the Hon. Michael R. Clancy, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Kathryn L. Oberer, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, David H. Iskowich, and Retha Stotts, Assistant State's Attorneys, of counsel), for the People. |