2023 IL App (1st) 230121-U

SECOND DIVISION
December 19, 2023

No. 1-23-0121

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 6338 |
| | ) | |
| KASHIF MUHAMMAD, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

ORDER

¶ 1     *Held*:   The judgment of the circuit court of Cook County is affirmed; the unlawful use of a weapon by a felon (UUWF) statute is constitutional as applied to defendant and on its face under the second amendment to the United States Constitution.

¶ 2     The State charged defendant, Kashif Muhammad, with unlawful use of a weapon by a felon (UUWF) in violation of section 24-1.1(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.1(a) (West 2020)). Following a jury trial, the circuit court of Cook County convicted and sentenced defendant for UUWF. For the first time in this direct appeal of defendant's conviction, defendant argues that section 24-1.1(a) is unconstitutional on its face and as applied to him in violation of the second amendment to the United States Constitution pursuant to the test announced by the United States Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen*,

597 U.S. \_\_\_, 142 S. Ct. 2411 (2022). We find that section 24-1.1(a) is constitutional as applied to defendant and on its face because the second amendment does not protect felons' "right to keep and bear arms." See *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2156 (2022) ("The Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions. \*\*\* New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents *law-abiding citizens* with ordinary self-defense needs from exercising *their right* to keep and bear arms." (Emphases added.))

¶ 3    Accordingly, we affirm the trial court's judgment.

¶ 4                                    BACKGROUND

¶ 5    A police officer stopped a vehicle defendant was driving for a traffic violation. Based on defendant's movements, the officer suspected defendant possessed something he did not want the officer to find. The officer performed a pat-down search of defendant, whereupon the officer discovered that defendant possessed a handgun. The officer arrested defendant and, in May 2021, the State charged defendant with two counts of aggravated unlawful use of a weapon (AUUW) and one count of unlawful use of a weapon by a felon (UUWF).

¶ 6    Defendant represented himself in the trial court. Defendant filed a *pro se* motion to quash arrest and suppress evidence. At a hearing on the motion, the officer who arrested defendant testified the officer stopped defendant because the driver's view was obstructed by an air freshener hanging from the rearview mirror. When the officer stopped defendant's vehicle, there was a passenger in the front passenger seat, the officer could detect the smell of burnt cannabis in the vehicle, and defendant failed to produce proof of insurance. Based on defendant's movements during the stop and the smell of burnt cannabis the officer suspected defendant was

hiding something. The officer performed the pat down search and found a loaded handgun on defendant's person. Defendant failed to produce a valid Firearm Owner's Identification (FOID) card or a valid Concealed Carry License (CCL). Defendant told the officer he did not have a FOID card or a CCL. The officer later discovered additional live rounds of ammunition in defendant's pants pocket.

¶ 7 Following the hearing, the trial court denied the motion to quash arrest and suppress evidence. The case proceeded to a jury trial on the UUWF count only. The State moved to bar defendant from arguing at trial that the UUWF statute is unconstitutional. The court granted the State's motion. At trial, the State entered a certified copy of defendant's prior felony conviction for theft into evidence. After the State rested its case, defendant did not present any evidence. The jury found defendant guilty of UUWF.

¶ 8 The trial court appointed the public defender to represent defendant for posttrial proceedings. Defendant, through counsel, filed a motion for judgment notwithstanding the verdict or new trial. The posttrial motion did not argue the UUWF statute is unconstitutional. The trial court denied the motion. Defendant, through counsel, also filed an amended motion for a new trial and a motion to reconsider sentence. The trial court denied both motions.

¶ 9 This appeal followed.

¶ 10 ANALYSIS

¶ 11 The issue in this appeal is whether section 24-1.1(a) of the Code (the UUWF statute) violates the second amendment to the United States constitution (U.S. const., amend. II) both as applied to defendant and on its face because there is allegedly "no founding-era analogue of permanent status-based revocation of the right to keep and bear arms" applicable to convicted felons under the second amendment test the United States Supreme Court articulated in *Bruen*.

The sole issue on appeal involves the constitutionality of a statute; and the constitutionality of a statute is an issue this court reviews *de novo*. *Blanchard v. Berrios*, 2016 IL 120315, ¶ 16 ("The interpretation of constitutional provisions is governed by the same general principles that apply to statutes"), *People v. Baker*, 2023 IL App (1st) 220328, ¶ 21 ("the interpretation of a statute presents a question of law that we review *de novo*"). Initially, we note that defendant's as-applied challenge to the statute is not forfeited. See *Baker*, ¶ 35 (and cases cited therein finding that the Illinois Supreme Court and the First, Second, and Third Districts of the Illinois Appellate Court have all held that a challenge to the constitutionality of a statute may be raised at any time and that this proposition applies equally to as-applied claims as to facial claims).

¶ 12      It is universally accepted that *Bruen* "set out a new framework for lower courts to evaluate gun laws." *Herrera v. Raoul*, 23 CV 532, 2023 WL 3074799, at *5 (N.D. Ill. Apr. 25, 2023), *aff'd sub nom. Bevis v. City of Naperville, Illinois,* 23-1353, 2023 WL 7273709 (7th Cir. Nov. 3, 2023) (citing *Bruen*, 142 S. Ct. at 2126-34; *United States v. Rahimi*, 61 F.4th 443, 450-51 (5th Cir. 2023) ("acknowledging that '*Bruen* clearly fundamentally changed our analysis of laws that implicate the Second Amendment, rending our prior precedent obsolete' (cleaned up and internal citation omitted)")). See also *Baker*, 2023 IL App (1st) 220328, ¶ 2; *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 68 ("in *Bruen*, the Supreme Court announced a new analytical framework for evaluating the constitutionality of firearm regulations").

"The *Bruen* Court outlined a two-step analysis to determine whether a challenged gun regulation is constitutional. *Bruen*, 142 S. Ct. at 2126-34. The Court must first determine whether 'the Second Amendment's plain text covers an individual's conduct.' [Citation.] If the plain text does not cover the challenged regulation, then the regulation is outside of the Second Amendment's scope and is

unprotected. [Citation.] However, if the text does include such conduct, 'the Constitution presumptively protects that conduct.' [Citation.] As such, for the regulation to be upheld as constitutional, '[t]he government must *** justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.' [Citation.]" *Herrera*, 23 CV 532, 2023 WL 3074799, at \*5.

¶ 13   We have no need to reach the test the government must pass "[t]o demonstrate that a regulation is 'consistent with the Nation's historical tradition of firearm regulation.' " *Herrera*, 23 CV 532, 2023 WL 3074799, at \*5. This case can be disposed of on the ground the second amendment's plain text does not cover the conduct at issue; specifically, possession of a firearm by a convicted felon regardless of the nature of the felony, or, in other words, defendant's status-based prohibition on gun possession. *Id.*; *Baker*, 2023 IL App (1st) 220328, ¶ 37.

¶ 14   In *Baker*, the defendant argued that the UUWF statute was unconstitutional as applied to him. *Baker*, 2023 IL App (1st) 220328, ¶ 33. The difference between an as-applied challenge to the constitutionality of a statute and a facial challenge is that an as-applied challenge "alleges only that the statute violates the constitution as applied to the particular facts and circumstances in the instant case" whereas a facial challenge alleges the statute is unconstitutional under any set of facts (*id.* ¶ 34); that is, a facial challenge alleges there is no set of facts under which the statute could be applied constitutionally (*People v. Ruth*, 2022 IL App (1st) 192023, ¶ 35 (citing *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 228 (2010))). Our analysis in this case can end with defendant's as-applied challenge, for if the statute may be constitutionally applied to defendant, clearly there is a set of circumstances under which the statute could be constitutionally applied, and the facial challenge must also fail. See *People v. Villareal*, 2023 IL

127318, ¶ 52 ("Since he acknowledges there may be situations where the statute may be constitutionally applied ***, his facial challenge fails"); *In re Jawan S.*, 2018 IL App (1st) 172955, ¶ 48 ("A facial challenge fails if we can conceive of any set of circumstances in which the statute could be validly applied—including as applied to the very party before us.").

¶ 15     In *Baker*, as in this case, the defendant argued that the UUWF statute is unconstitutional under the second amendment pursuant to the test for constitutionality the United States Supreme Court announced in *Bruen*. In *Baker*, the defendant's predicate felony was manufacturing and delivery of heroin. *Baker*, 2023 IL App (1st) 220328, ¶ 5. This court found that

> "[t]he problem with defendant's argument is that *Bruen* just does not
> apply to him. The *Bruen* Court could not have been more clear that its newly
> announced test applied only to laws that attempted to regulate the gun possession
> of 'law-abiding citizens,' and not felons like defendant. *Bruen*, 597 U.S. at ——,
> 142 S. Ct. at 2156 (the holding was limited to laws affecting 'law-abiding
> citizens')." *Baker*, 2023 IL App (1st) 220328, ¶ 37 (citing *Bruen*, 597 U.S. at ___,
> 142 S. Ct. at 2156).

The *Baker* court also noted that "Justice Kavanaugh in his concurrence quoted an earlier case that stated: " '[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ***.' *Bruen*, 597 U.S. at ——, 142 S. Ct. at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.) (quoting *[District of Columbia v.] Heller*, 554 U.S. [570,] 626-27 [(2008)])." *Baker*, 2023 IL App (1st) 220328, ¶ 37. In *Heller*, the Court wrote that "the right secured by the Second Amendment is not unlimited" and that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 627. This court held that based on "the

plain, clear, and repeated language of the justices in the majority, [the] defendant is simply outside the box drawn by *Bruen*." *Baker*, 2023 IL App (1st) 220328, ¶ 37.

¶ 16    In this case, defendant does not dispute, and agrees, writing in defendant's opening brief, that "[t]o evaluate the constitutionality of Section 24-1.1(a) of the unlawful use of a weapon by a felon statute, this Court must answer two questions: (1) whether [defendant] falls within the Second Amendment's protections at all, and (2) *if he does*, whether the historical record justifies a permanent ban on his ability to possess any firearm at any time." (Emphasis added.) In aid of defendant's preferred answer to the first question, defendant argues that "[t]he Supreme Court's analysis in *Heller* began with a 'strong presumption' that the right to keep and bear arms belonged to '*all* Americans.' " (Emphasis in original.) Defendant argues this necessarily includes Americans with felony convictions. Defendant attempts to refute the idea that language describing the second amendment right as belonging to "law abiding citizens" is evidence that the second amendment excludes people with felony convictions from its protections by asserting that the Seventh Circuit has "repeatedly refused to 'read too much into the [Supreme] Court's "precautionary language" ' " and that "the reference to 'law abiding' citizens in *Heller* was dicta," presumably to little if any effect. Defendant also argues that *Bruen* itself abrogates any such presumption—that is, felon dispossession—because "[t]he only presumption active in *Bruen* was its presumption about conduct: 'when the Second Amendment's plain text covers an individual's conduct.' "

¶ 17    We disagree with defendant's conclusion that the second amendment "presumptively applies to him." We agree with the *Baker* court's reasoning that the *Bruen* court expressly and repeatedly limited its holding to "law abiding citizens" and, as importantly, confirmed that

"longstanding prohibitions on the possession of firearms by felons" (*Heller*, 554 U.S. at 627) remained unharmed by its decision.

¶ 18    In further reply, defendant claims that this court's decision in *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 89, rejects the argument that the *burden* is on defendant to establish that the regulated activity falls within the protection of the second amendment and a defendant's—a felon's—possession of a firearm is presumptively constitutional. We are not swayed by *Brooks*.

¶ 19    As a threshold matter, even if we were to follow *Brooks* rather than *Baker*, defendant's outcome would remain the same. This court in *Brooks* acknowledged that "since *Bruen*, courts of various jurisdictions have grappled with this issue and in the vast majority of cases have found that, as applied to nonviolent felons, statutes prohibiting felons from possessing weapons are constitutional under *Bruen*." *Brooks*, 2023 IL App (1st) 200435, ¶ 79. See also *id*. ¶ 105.

¶ 20    In *Brooks*, the State did argue that the plain text of the second amendment did not encompass the defendant because he was "not a 'law abiding citizen,' " and the *Brooks* court did hold that the defendant's status as a felon is irrelevant at the stage of the analysis that asks whether the regulated conduct falls under the conduct protected by the plain language of the second amendment. *Brooks*, ¶¶ 87-89. Instead, according to *Brooks*, "[h]ow the defendant's prior felony might impact his second amendment right to possess a firearm is more properly evaluated under the second step's historical tradition analysis." *Brooks*, 2023 IL App (1st) 200435, ¶ 89. The *Brooks* court engaged in that analysis and concluded that:

> "there is a historical tradition of legislatures exercising their discretion to impose 'status-based restrictions' disarming entire 'categories of persons' who, based on their past conduct, were presumed unwilling to obey the law. *Range*, 69 F.4th at 129 (Krause, J., dissenting). 'Legislatures did so not because the individuals in

these groups were considered dangerous [or violent], but because, based on their status, they were deemed non-law-abiding subjects.' [Citations.] While the particular groups varied over time, the founders understood that felons were one such group. *Range*, 69 F.4th at 129." *Brooks*, 2023 IL App (1st) 200435, ¶ 97. But see *Baker*, 2023 IL App (1st) 220328, ¶ 38 (finding *Range* "does not cause us to reconsider our decision", in part because it "is limited to misdemeanor convictions [and] does not aid [the] defendant").

¶ 21    Nonetheless, we find support for our view in the *Brooks* court's own analysis. See *Brooks*, 2023 IL App (1st) 200435, ¶ 95.[1] The *Brooks* court ultimately held that: "Since the defendant in the instant case was twice convicted of a felony, albeit nonviolent ones, he is not a law-abiding citizen, and the armed habitual criminal statute that prohibits his possession of firearms is constitutional as applied to him." *Brooks*, 2023 IL App (1st) 200435, ¶ 100. Ironically, in reaching that decision allegedly under the second step of the *Bruen* analysis, the *Brooks* court agreed that categorical restrictions on the possession of firearms such as by felons "are inextricably linked to the notion of 'law-abiding citizens.' " *Id.* ¶ 92. Later, the court further found:

---

[1]    "Prior to the adoption of the Bill of Rights in 1791, during the ratification process, the 'highly influential minority proposal' [citations], published by the Anti-Federalist delegates in Pennsylvania, suggested that the people should have a right to bear arms ' "unless for crimes committed, or real danger of public injury from individuals." ' [Citation.] While this amendment was not adopted, it is important because it reflects the understanding of the founders that 'crimes committed,' whether dangerous or not, justified disarmament." *Brooks*, 2023 IL App (1st) 200435, ¶ 95. This "important" proposal does not say that the people would *lose* the right to bear arms for crimes committed; it *conditioned* the right based on whether crimes were committed.

"The majority of legal historians agree with this position, noting that in 'classical republican political philosophy' the right to bear arms was 'inextricably and multifariously tied to' the concept of a 'virtuous citizenry.' [Citations.] In other words:

'[T]he right to bear arms in the Founding era [was] a civic right. *Such a right was not something that all persons could claim but was limited to those members of the polity who were deemed capable of exercising it in a virtuous manner.*' (Emphasis in original and emphasis added.) [Citation.].

*As such '[f]elons simply did not fall within the benefit of the common law right to possess arms,' which turned on one's law-abiding character.* [(Emphasis added.) Citations.].

This conclusion is further bolstered by Supreme Court precedent. In *Heller*, the Court held that the second amendment 'elevates above all other interests the right of *law-abiding, responsible citizens* to use arms in defense of hearth and home.' (Emphasis added.) *Heller*, 554 U.S. at 635. *** Subsequently, in *Bruen*, the Supreme Court characterized the holders of second amendment rights as 'law-abiding citizens' no fewer than fourteen times. [Citation.] These included its instruction to identify historical analogues to modern firearm regulations by assessing how and why the regulations burden *a 'law-abiding citizen's' right* to armed self-defense. [(Emphasis added.) (Citation.)] In addition, the *Bruen* Court indicated that it would not disfavor a licensing regime that required applicants to undergo criminal background checks that are 'designed to

ensure' that 'those bearing arms in the jurisdiction are, in fact *law-abiding, responsible citizens.*' (Emphasis added and internal quotation marks omitted.)

[Citation.]" *Brooks*, 2023 IL App (1st) 200435, ¶¶ 98-99.

¶ 22    Based on our reading of the *Brooks* court's historical analysis, we find that the history on which *Brooks* relies finds that categorical prohibitions on felons' possession of firearms are "consistent with the Nation's historical tradition of firearm regulation" under *Bruen*'s second prong and lends support to the *Baker* court's finding that "*Bruen* just does not apply" because "defendant is simply outside the box drawn by *Bruen*." *Brooks*, 2023 IL App (1st) 220328, ¶ 37. We note that the *Brooks* court did nothing to elucidate the distinction it drew between the conduct of possessing a firearm and the status of the actor possessing the firearm for second amendment purposes. We agree with *Baker*'s implicit finding that the regulated conduct in this context is not mere possession but possession by a felon.

¶ 23    We reject *Brooks*' holding that relying on the defendant's status as a felon to find that the defendant's possession of a firearm is removed from the protections of the second amendment "conflates *Bruen*'s first step with its second" because the first step "asks only whether 'the Second Amendment's plain text covers an individual's *conduct*" (emphasis in original), meaning only the conduct of possession, not the conduct of a particular actor engaged in the conduct. See *id*. ¶ 89. We find this to be an overly narrow view of the first step of the *Bruen* analysis that the Supreme Court did not intend. As evidence the Supreme Court did not intend the first step to be read in this way, we agree with *Baker*: "Just in case a reader missed the first time that the court said it, the court repeated it 18 times. *Bruen*, 597 U.S. ——, 142 S. Ct. 2111 *passim* (the six justices in the majority repeated the phrase 'law-abiding' 18 times in their majority opinion and their concurrences)." *Baker*, 2023 IL App (1st) 220328, ¶ 37.

¶ 24    We find defendant's argument the UUWF statute is unconstitutional as applied to him fails at the first step of the *Bruen* analysis. Therefore, we find that section 24-1.1(a) is constitutional as applied to defendant and, because the statute may be constitutionally applied to felons, it is not unconstitutional on its face.

¶ 25                                  CONCLUSION

¶ 26    For the foregoing reasons, the circuit court of Cook County is affirmed.

¶ 27    Affirmed.