2024 IL App (1st) 221138-U

No. 1-22-1138

Order filed November 14, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21CR1161901 |
| | ) | |
| LAMAR ATKINS, | ) | Honorable |
| | ) | Vincent Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Rochford and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm defendant's conviction for unlawful use or possession of a weapon by a felon over his claim that the statute is facially unconstitutional under the second amendment.

¶ 2   Following a jury trial, defendant Lamar Atkins was found guilty of unlawful use or possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2020)), then sentenced to 26 months' imprisonment. On appeal, Mr. Atkins contends that section 24-1.1(a) of the Criminal Code of 2012 (Code) (*id.*) violates the second amendment to the United States Constitution (U.S.

Const., amend II) on its face following the new test established by the United States Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). For the reasons that follow, we reject Mr. Atkins' facial challenge to section 24-1.1(a), and we affirm.

¶ 3                                I. BACKGROUND

¶ 4      On August 16, 2021, Chicago police officers Arturo Alegria and Anthony Sorrentino were on routine patrol when they observed a vehicle being driven by Mr. Atkins turn onto 71st Street, near Halsted Street in Chicago. The officers ran a random LEADS on the vehicle's license plate number and discovered that the license plate had been revoked. The officers conducted a traffic stop of the vehicle and Mr. Atkins stopped the vehicle at a nearby gas station. Mr. Atkins was the only occupant of the vehicle.

¶ 5      The officers approached the vehicle and could see Mr. Atkins bend and make movements "left to right" in the driver's seat. The officers smelled alcohol and Mr. Atkins told them that he had cannabis in the vehicle. The officers ordered Mr. Atkins to exit the vehicle and Mr. Atkins complied. Mr. Atkins did not have a valid driver's license. One of the officers observed a clear cup with liquid spilled on the passenger-side floor. The officers searched the vehicle and discovered a bag of cannabis in the center console and a firearm under the driver's seat. Prior to trial, Mr. Atkins filed a motion to quash arrest and suppress the evidence discovered in the search of the vehicle, but the court denied the motion, finding that there was probable cause to search the vehicle after the officers smelled alcohol and observed the cup with the spilled liquid.

¶ 6      Mr. Atkins' ex-girlfriend, Eriqa Brown, testified that while they were dating, she helped Mr. Atkins purchase the vehicle involved in this case by putting it in her name. After she and Mr. Atkins broke up in December 2020, she never saw or drove the vehicle. She denied that she had ever possessed a firearm and did not recognize the firearm recovered from the vehicle.

¶ 7     The parties stipulated that Mr. Atkins had previously been convicted of felony retail theft. The jury found Mr. Atkins guilty of UUWF. The court subsequently sentenced Mr. Atkins to 26 months' imprisonment. Mr. Atkins filed a timely notice of appeal on July 18, 2022. We find that we have jurisdiction to consider the merits of this appeal pursuant to Illinois Supreme Court Rule 606 (eff. Jul. 1, 2017).

¶ 8                                    II. ANALYSIS

¶ 9     On appeal, and for the first time, Mr. Atkins contends that we should vacate his conviction for UUWF because section 24-1.1(a) of the Code (720 ILCS 5/24-1.1(a) (West 2022)) is unconstitutional on its face because it violates the second amendment. Mr. Atkins maintains that section 24-1.1(a) cannot satisfy the new two-part test the Supreme Court set forth in *Bruen* because there is no founding-era evidence of a permanent, status-based revocation of the right to keep and bear arms like the one found in the UUWF statute.

¶ 10                              A. Facial Challenge

¶ 11    First, we recognize that although Mr. Atkins did not raise this issue before the trial court, a party may challenge the constitutionality of a statute at any time. *In re M.I.*, 2013 IL 113776, ¶ 39 (citing *People v. McCarty*, 223 Ill. 2d 109, 122 (2006)). "Statutes are presumed constitutional, and the party challenging the constitutionality of a statute has the burden of clearly establishing its invalidity. A court must construe a statute so as to uphold its constitutionality if reasonably possible." *People v. Gray*, 2017 IL 120958, ¶ 57. As distinguished from an as-applied challenge, a party making a facial challenge to a statute has the burden of showing that the statute is unconstitutional under any set of facts. *People v. Thompson*, 2015 IL 118151, ¶ 36. "A statute will be deemed facially unconstitutional only if there is no set of circumstances under which the statute

would be valid." *People v. Bochenek*, 2021 IL 125889, ¶ 10. The constitutionality of a statute is a question of law, which we review *de novo*. *Gray*, 2017 IL 120958, ¶ 57.

¶ 12                                    B. The Second Amendment and *Bruen*

¶ 13    The second amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. The Supreme Court has recognized that the second and fourteenth amendments protect the right of ordinary, " 'law-abiding' " citizens to possess a handgun inside and outside of the home for self-defense. *People v. Burns*, 2024 IL App (4th) 230428, ¶ 14 (citing *Bruen*, 597 U.S. at 8-9; *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008); *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010)).

¶ 14    In *Bruen*, the Court examined New York's firearm licensing regime, which required applicants to establish "proper cause" for licensure. *Bruen*, 597 U.S. at 12. The petitioners sought unrestricted licenses to carry a handgun in public and challenged New York's regime under the second amendment. *Id.* at 16. The Supreme Court reiterated its holding in *Heller* that when the plain text of the second amendment covers an individual's conduct, the Constitution "presumptively" protects that conduct. *Id.* at 17. The Court recognized that since its decision in *Heller*, many Courts of Appeals had applied a two-step framework for analyzing second amendment challenges. *Id.* at 17. The court would first examine the historical tradition of firearm regulation, and then apply a "means-end scrutiny" to determine if the law unduly burdened the rights granted by the second amendment. *Id.* at 18.

¶ 15    The *Bruen* court determined that despite the popularity of this approach, "it is one step too many." *Id.* at 19. The court found that under *Heller* and *McDonald*, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the

outer bounds of the right to keep and bear arms." *Id.* Applying this standard, the Court found that New York's firearm licensing regime that required individuals to show a "special need for self-defense" to carry a firearm in public violated citizens' right to bear arms. *Id.* at 9. The decision in *Bruen* therefore created a new two-part test for courts evaluating the constitutionality of firearm regulations under the second amendment. The court must first determine whether the plain text of the second amendment covers an individual's conduct. *Id.* at 24. If so, then the Constitution "presumptively" protects that conduct and the government must justify the regulation by showing that it is consistent with the nation's historical tradition of firearm regulation. *Id.*

¶ 16                                   C. Section 24-1.1(a) under *Bruen*

¶ 17    Relying on the test announced in *Bruen*, Mr. Atkins contends that section 24-1.1(a) of the Code is unconstitutional because there is no historical tradition of permanently banning a group of individuals from possessing firearms on the basis that they have previously been convicted of a felony. Section 24-1.1(a) provides, in pertinent part:

> "It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2022).

Mr. Atkins maintains that his conduct of possessing a firearm is covered by the plain text of the second amendment and is therefore presumptively protected by the Constitution. He asserts that because section 24-1.1(a) regulates that conduct, the burden falls on the State to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19. He contends that the State cannot meet

that burden where there are no firearm regulations from the historical periods identified in *Bruen* that are analogous to a permanent ban on the possession of firearms based solely on a previous felony conviction.

¶ 18    Our research reveals that since *Bruen* was decided, dozens of criminal defendants have raised claims in this court similar or identical to the claim raised by Mr. Atkins here, challenging the constitutionality of various firearm regulations that restrict convicted felons' access to firearms. These cases have uniformly rejected these constitutional challenges on two grounds. First, we have found that convicted felons are not included in "the people" protected by the second amendment. Second, we have found that permanently banning convicted felons from possessing firearms is in keeping with this nation's historical tradition of firearm regulation.

¶ 19                                    1. *The People*

¶ 20    In *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37, the defendant raised an as-applied constitutional challenge to section 24-1.1(a), relying on *Bruen*. The *Baker* court rejected the challenge, finding that *Bruen* does not apply to convicted felons. *Id.* The court determined that the Supreme Court was "clear" that the test announced in *Bruen* applied only to laws that sought to regulate the firearm possession of "law-abiding citizens." The *Baker* court observed that the majority opinion and concurrences in *Bruen* used the phrase "law-abiding citizens" 18 times when referring to the right to possess firearms under the second amendment. *Id.* The court determined that, as a felon, the defendant was not a "law-abiding" citizen to which *Bruen* applied. *Id.* The court noted that in his concurring opinion, Justice Kavanaugh explicitly stated that: "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ***. (Internal quotation marks omitted.) *Id.* (citing *Bruen*, 597 U.S. at 81 (Kavanaugh, J., concurring, joined by Roberts, C.J.) (quoting *Heller*, 554 U.S. at 626-27).

¶ 21    Numerous other panels and districts of this court have agreed with the holding in *Baker* that *Bruen* does not apply to felons who have their second amendment rights restricted because they are not included in "the people" protected by the second amendment. See, *e.g.*, *People v. Box*, 2024 IL App (4th) 230649-U, ¶ 78; *People v. Burns*, 2024 IL App (4th) 230428, ¶ 18; *People v. Muhammad*, 2023 IL App (1st) 230121-U, ¶¶ 14-17; *People v. Mobley*, 2023 IL App (1st) 221264, ¶¶ 27-30.

¶ 22    Mr. Atkins asserts that we should reject *Baker's* analysis and instead rely on this court's holding in *People v. Brooks*, 2023 IL App (1st) 200435. In *Brooks*, another panel of this court rejected the State's contention that the plain text of the second amendment did not protect the defendant because he was a convicted felon. *Id.* ¶¶ 88. The court found that in making this argument, the State was incorrectly conflating *Bruen's* first step with its second. *Id.* ¶ 89. The court noted that the first step under *Bruen* was to ask only whether "the Second Amendment's plain text covers an individual's *conduct*.' " (Emphasis in original.) *Id.* (*quoting Bruen*, 597 U.S. at 17). The *Brooks* court observed that this step does not "contemplate the actor or the subject," and, therefore, the defendant's status as a felon was irrelevant at this stage of the analysis. *Id.* The court concluded that how the defendant's prior felony conviction might impact his second amendment right to possess a firearm was more properly evaluated under *Bruen's* second step historical tradition analysis. *Id.*

¶ 23    While we find the analysis in *Brooks* well-stated, we are not persuaded by its conclusion. Instead, we join the majority of panels on this issue who have examined the holdings in *Baker* and *Brooks* and elected to follow *Baker*. See, *e.g.*, *People v. Martinez*, 2024 IL App (2d) 230305-U, ¶¶ 31-34 ("We decline to follow *Brooks'* reasoning as to the first step of the *Bruen* analysis. Instead, we join the great weight of authority in Illinois and agree that the second amendment does not

apply to a felon's firearm possession."); *People v. Whitehead*, 2024 IL App (1st) 231008-U, ¶¶ 81-82 (disagreeing with *Brooks* because the "conduct at issue" regulated by the armed habitual criminal statute is not the mere possession of firearms, but the possession of firearms "by felons"); *People v. Wright*, 2024 IL App (1st) 230428-U, ¶ 20 (declining to follow *Brooks* and instead following *Baker*, *Mobley*, and *Burns*); *People v. Carldwell*, 2024 IL App (1st) 230968-U, ¶¶ 21-22 (same). As such, Mr. Atkins conduct of possessing a weapon after having been convicted of a felony is not covered by the plain text of the second amendment and not "presumptively" protected by the Constitution.

¶ 24    Even if we elected to follow *Brooks* and proceeded to *Bruen's* second step, we would nonetheless find that Mr. Atkins' facial challenge fails. To carry its burden under the second step that the regulation at issue is consistent with the nation's tradition of firearm regulation, the State must identify " 'historical precedent' " from before, during, and even after the founding [that] evinces a comparable tradition of regulation." *Bruen*, 597 U.S. at 27 (quoting *Heller*, 554 U.S. at 631). Notably, after this case was briefed, the Supreme Court issued its decision in *United States v. Rahimi*, where the Court reaffirmed its holding in *Heller* that prohibitions, "like those on the possession of firearms by '*felons* and the mentally ill,' are 'presumptively lawful.' " (Emphasis added.) *United States v. Rahimi*, 602 U.S. ___, 144 S. Ct. 1889, 1902 (2024) (quoting *Heller*, 554 U.S. at 626, 627 n. 26).

¶ 25    Even before *Rahimi* was decided, however, this court reached a similar conclusion regarding felon-in-possession statutes. For example, in *Brooks*, despite finding that the defendant's conduct was presumptively protected by the second amendment, the court nonetheless rejected his constitutional challenge after considering the nation's historical tradition of firearm regulation. *Brooks*, 2023 IL App (1st) 200435, ¶ 90. After examining numerous federal court decisions,

treatises on the history of firearm regulation, and the Supreme Court's own analysis of our nation's historical firearm regulation in *Bruen* and *Heller*, the *Brooks* court concluded that there was a "historical tradition of legislatures exercising their discretion to impose status-based restrictions disarming entire categories of persons who, based on their past conduct, were presumed unwilling to obey the law." (Internal quotation marks omitted.) *Brooks*, 2023 IL App (1st) 200435, ¶¶ 91-97. The *Brooks* court observed that "[w]hile the particular groups varied over time, the founders understood that felons were one such group." *Id.* ¶ 97. The court further noted that "[f]ounding-era criminal punishments also demonstrate the widespread acceptance of the legislature's authority to disarm felons." *Id.* ¶ 96.

¶ 26    Other courts have applied *Brooks'* analysis in finding that section 24-1.1(a) is not unconstitutional on its face. See, *e.g.*, *Muhammad*, 2023 IL App (1st) 230121-U, ¶¶ 22-24 ("Based on our reading of the *Brooks* court's historical analysis, we find that the history on which *Brooks* relies finds that categorical prohibitions on felons' possession of firearms are 'consistent with the Nation's historical tradition of firearm regulation' under *Bruen's* second prong and lends support to the *Baker* court's finding that '*Bruen* just does not apply' because 'defendant is simply outside the box drawn by *Bruen*.' "); *Martinez*, 2024 IL App (2d) 230305-U, ¶ 49 ("In sum, defendant's challenge to the [UUWF (720 ILCS 5/24-1.1 (West 2018))] statute fails under the *Bruen* analysis because felons, who are not law-abiding citizens, are not afforded the same second amendment protections enjoyed by 'the people' referenced therein. Further, even if the text of the second amendment was to be construed as presumptively protecting felons, the [UUWF] statute is consistent with this Nation's historical tradition of firearms regulation."); *Carldwell*, 2024 IL App (1st) 230968-U, ¶¶ 24-25 (rejecting the defendant's facial challenge to section 24-1.1(a) of the Code based on *Baker* and *Brooks*); see also, *People v. Travis*, 2024 IL App (3d) 230113, ¶ 33 ("In

sum, we conclude there is a history and tradition dating back to the founding era of identifying dangerous individuals and disarming them. *** the [armed habitual criminal] and UUWF statutes are consistent with this nation's history of preventing potentially dangerous individuals from exercising the right to bear arms, and their effects on law-abiding citizens' right to self-defense are minimal.").

¶ 27    Mr. Atkins nonetheless maintains that section 24-1.1(a) is unconstitutional because it does not distinguish between felons with a violent criminal background and those with a non-violent criminal background, instead mandating permanent dispossession for all felons.

¶ 28    Notably, however, the authority cited above, and other precedent following *Bruen*, have recognized that such felon dispossession statutes are constitutional regardless of whether the defendant's criminal history is violent or non-violent. *Id.* ¶ 37 ("Under the [armed habitual criminal] and UUWF statutes, both of which are facially constitutional, defendant is prohibited from possessing a firearm due to his status as a felon, irrespective of the violent or nonviolent nature of his convictions."); see also *Whitehead*, 2024 IL App (1st) 231008-U, ¶ 84 (recognizing that the constitutionality of disarming felons extends to nonviolent felons); *People v. Leonard*, 2024 IL App (4th) 230413-U, ¶ 15 ("defendant's previous felony convictions make him not a law-abiding citizen and, therefore, not protected by the second amendment. By incurring a felony conviction, even a nonviolent felony conviction, a citizen forever loses the constitutional right to have a firearm for the defense of his person and his house").

¶ 29    The facial challenge Mr. Atkins presents to section 24-1.1(a) has therefore been consistently rejected by every panel and district of this court that has considered this issue or similar felon dispossession statutes under *Bruen*. We find no basis to disturb this well-established

precedent here. We therefore reject Mr. Atkins' facial challenge to section 24-1.1(a) under the second amendment and we affirm his conviction.

¶ 30                                   CONCLUSION

¶ 31    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 32    Affirmed.