2026 IL App (1st) 231055-U

FOURTH DIVISION
Order Filed: March 31, 2026

No. 1-23-1055

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 11941 |
| | ) | |
| JOSHUA MACON, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Justices Ocasio and Quish concurred in the judgment.
Justice Ocasio also specially concurred.

**ORDER**

¶ 1    *Held*: Defendant's conviction is affirmed where evidence does not support defendant's claim of ineffective assistance of counsel and defendant's conviction does not violate the second amendment of the United States Constitution or the Illinois Constitution.

¶ 2    Defendant-appellant, Joshua Macon, was found guilty of unlawful possession of firearm ammunition (720 ILCS 5/24-1.1(a) (West 2022)) following a bench trial on April 26, 2023. On May 30, 2023, Mr. Macon filed a motion to reconsider the finding of guilty. That same day, the circuit court denied the motion, then sentenced Mr. Macon to 3 years' imprisonment. On appeal,

Mr. Macon argues that (1) he received ineffective assistance of counsel at a critical stage of the proceedings in violation of the sixth amendment (U.S. Const., amend. VI) and (2) his conviction violates the second amendment (U.S. Const., amend. II) and the Illinois Constitution (Ill. Const. 1970, art. I, § 22) on its face and as applied to him. For the reasons that follow, we affirm Mr. Macon's conviction.

¶ 3                                BACKGROUND

¶ 4     The State charged Mr. Macon under the unlawful use or possession of a weapon by a felon statute (UUWF) for unlawful possession of a weapon (count I), unlawful possession of firearm ammunition (count II), and aggravated unlawful use of a weapon (counts III through V). Mr. Macon elected to have a bench trial, which took place on April 26, 2023. The State proceeded to trial on counts I and II, and counts III through V were *nolle prosequi*.

¶ 5     Defense counsel opened with the following statement:

> "This case is about a gun that was found somewhere that my client wasn't. No officer is going to testify that he saw my client touching a gun, no body-worn camera is going to be seen identifying my client. My client denied all knowledge knowing a gun existed."

The court then instructed the State to call its first witness, to which the State responded by reiterating that it was "proceeding on counts 1 and 2." The State then called two witnesses: Chicago Police Department officers Patrick Joyce and Eduardo Hernandez.

¶ 6     Officer Joyce testified that on September 26, 2022, he and other officers were on a routine patrol when they relocated to the area of 20 North Mason Avenue in Chicago, Illinois to follow their sergeant for a narcotics investigation. When the officers arrived on scene, Officer Joyce observed Sergeant Gilliland approaching Mr. Macon. Mr. Macon was backing away from Sergeant

Gilliland and slowly making his way towards a gangway. As Mr. Macon started to go into the gangway, his pace quickened so Officer Joyce followed him. Mr. Macon headed straight down the gangway and made a right into a yard. Officer Joyce told Mr. Macon to stop, but Mr. Macon kept walking into the yard where Officer Joyce followed him. Officer Joyce got stuck on a fence and lost sight of Mr. Macon for about five seconds. When Officer Joyce got to the yard, Mr. Macon came out of an open gate and stated, "I just got weed." The officers arrested Mr. Macon, and Officer Joyce looked around the yard for a weapon and asked Sergeant Gilliland to search the next yard over. Sergeant Gilliland recovered a firearm—a Taurus 9mm—from the adjacent yard.

¶ 7     On cross-examination, defense counsel questioned Officer Joyce about whether he observed Mr. Macon with a weapon or anything resembling a weapon. Officer Joyce testified that when another officer searched the backpack Mr. Macon was wearing, they found "just weed." Defense counsel did not ask Officer Joyce about firearm ammunition.

¶ 8     Officer Hernandez testified that he was on duty with Officers Joyce and Cook on September 26, 2022, in the area of 20 North Mason Avenue to back up Sergeant Gilliland who had observed possible narcotic transactions. Sergeant Gilliland tried to approach Mr. Macon who failed to respond and continued to walk away through a gangway and into a yard. Mr. Macon was wearing a dark colored backpack. After Officer Joyce arrested Mr. Macon in the yard and the scene was secured, Officer Hernandez looked inside of the backpack Mr. Macon had been wearing. Officer Hernandez observed Ziploc bags and cannabis. Officer Hernandez heard Officer Joyce tell Sergeant Gilliland to search an adjacent yard which was separated by a wooden fence. Sergeant Gilliland then recovered a weapon by a vehicle on the ground.

¶ 9     Mr. Macon was placed into custody, and the officers took him to the police station. At the station, Officer Hernandez searched the backpack and found "[c]annabis, empty Ziploc bags used

for packaging narcotics, live ammo, and an ID." The recovered school ID had Mr. Macon's name and picture on it. Officer Hernandez inventoried five bullets, found loose inside the backpack. The recovered bullets were 9mm ammunition which matched the recovered firearm—a 9mm handgun.

¶ 10    On cross-examination, defense counsel asked Officer Hernandez several questions about whether he observed a weapon on Mr. Macon, which he had not. Defense counsel did not ask about the ammunition.

¶ 11    After the cross-examination, the court questioned Officer Hernandez about the ammunition:

> "THE COURT: Officer, how do you know it is ammunition? You said I recovered ammunition. How do you know that?
>
> HERNANDEZ: Through experience.
>
> THE COURT: Tell me how do you know it's ammunition and not some fake bullet. How do you know that?
>
> HERNANDEZ: Through experience, the way it felt, the weight, the look of it. It *** wasn't brand new ammunition. It was ammunition that had been tossed around.
>
> THE COURT: Anything based on that, State? Defense?"

¶ 12    On recross-examination, defense counsel asked Officer Hernandez if he knew if the ammunition was tested with the gun or if he was aware whether a firearm worksheet was worked up in the case. Officer Hernandez did not know if the ammunition was tested and was not aware of a firearm worksheet.

¶ 13    The parties stipulated to the body-worn camera footage of Sergeant Gilliland and that on September 26, 2022, Mr. Macon had previously been convicted of a qualifying felony offense.

¶ 14    During closing arguments, defense counsel stated the following:

"There has not been any testimony nor written report or body-worn camera footage of my client holding a weapon, shown resembling holding a weapon, stating that he had a weapon or admitting knowledge of such weapon. The police officer even stated that he didn't see my client throwing a weapon. He also stated that no one looked anywhere else. You saw on body-worn camera they didn't know where this was. They were hunting and searching. It was almost a hail [mary] pass. We're asking for a not guilty because my client did not have a weapon on him."

¶ 15    The trial court asked defense counsel about the charge that Mr. Macon possessed firearm ammunition, which was count II. Defense counsel's response was, "I'm sorry. I forgot they were going on count 2." The court then asked if he had any response to that. Defense counsel concluded with the following:

"DEFENSE COUNSEL: My client stated as you looked the officer showed there was ammunition in the backpack. The officer made it seem like there was nothing else in the backpack except an ID and ammunition. They pulled everything out and there was like a plethora of life in there. They never tested it to see if it was live ammunition.

THE COURT: Does the State have to prove live ammunition or any firearm ammunition.

DEFENSE COUNSEL: Correct. You have to prove that it's real ammunition. You can't prove that this is not actual firearm ammunition. Also, your Honor, this is a bookbag for schooling. No testimony states that it was my client's bookbag or whether he got it, just that his ID was in it. We ask for a finding of not guilty."

¶ 16    The State closed by arguing the ammunition was found inside the backpack Mr. Macon

was observed wearing, along with an ID with his name and picture. Regarding the actual firearm, the State urged the trial court to look at the totality of the evidence.

¶ 17    Following closing arguments, the trial court found Mr. Macon not guilty of count I, possession of a firearm, but did find him guilty of count II, possession of firearm ammunition. Specifically, the court stated:

> "I agree with the defense here with Mr. Macon's testimony regarding the firearm that is not just proof beyond a reasonable doubt that he had that gun on him or that he possessed that gun for purposes of guilt beyond a reasonable doubt possessing the weapon. However, as to the firearm ammunition, I'm satisfied. The officer testified in a sense I asked that question, but the officer called it ammunition.

> He's been a police officer for five and a half years. He said based upon his experience it's ammunition. It was 9mm ammunition. The State has to prove any ammunition and it was in a backpack that he was wearing with his identification. There is no doubt that this was possession of firearm ammunition."

¶ 18    Mr. Macon filed a motion to reconsider the guilty verdict on May 30, 2023. That same day, the trial court denied the motion and sentenced Mr. Macon to the minimum sentence of three years in prison. Mr. Macon filed his notice of appeal on May 31, 2023.

¶ 19                                          ANALYSIS

¶ 20    We note that we have jurisdiction to consider this matter, as Mr. Macon filed a timely notice of appeal. See Ill. S. Ct. R. 606 (eff. July 1, 2017).

¶ 21    On appeal, Mr. Macon argues that (1) he received ineffective assistance of counsel at a critical stage of the proceedings in violation of the sixth amendment and (2) section 24-1.1(a) of

the UUWF statute ((720 ILCS 5/24-1.1(a) (West 2022)) violates the second amendment of the United States Constitution and the Illinois Constitution facially and as applied to him.

¶ 22                                    I. Ineffective Assistance of Counsel

¶ 23    First, Mr. Macon contends he was denied his constitutional right to counsel at a critical stage of the proceedings because of defense counsel's absence of representation during trial and after the presentation of evidence. Specifically, Mr. Macon argues that defense counsel forgot the State was prosecuting him on count II for possession of firearm ammunition and focused the defense case solely on count I—possession of a firearm.

¶ 24    To prevail on a claim of ineffective assistance of counsel, "a defendant ordinarily must show that (1) counsel's performance was deficient and (2) this deficient performance prejudiced the defense." *People v. Young*, 220 Ill. App. 3d 98, 106 (1991). "[J]udicial scrutiny of counsel's performance must be highly deferential." (Internal quotation marks omitted.) *People v. Bowman*, 325 Ill. App. 3d 411, 428 (2001) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

¶ 25    To show that counsel's performance was deficient, the defendant must demonstrate that counsel made errors so serious, that counsel was not functioning as the "counsel" guaranteed by the sixth amendment. *People v. Griffin*, 178 Ill. 2d 65, 73 (1997) (citing *Strickland*, 466 U.S. at 687). Counsel's representation must be shown to have fallen below an objective standard of reasonableness. *Harrington v. Richter*, 562 U.S. 86, 104 (2011). However, even professionally unreasonable errors by counsel do not warrant setting aside a criminal judgment if the errors had no effect on the judgment. *Strickland*, 466 U.S. at 691.

¶ 26    To establish the second prong of prejudice, the defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The defendant must show that there is a reasonable probability the judgment

would have been different if not for counsel's unprofessional errors. *Id.* at 694; *Young*, 220 Ill. App. 3d at 106. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The defendant does not need to show by a preponderance of the evidence that counsel's errors affected the outcome of the proceeding. *Id.* The question is whether there is a reasonable probability that the factfinder would have a reasonable doubt of the defendant's guilt absent counsel's errors. *Id.* at 695. In assessing this question, the court evaluating the ineffectiveness claim must consider the totality of the evidence that was before the factfinder. *Id.*

¶ 27 The deficient performance and prejudice prongs can be evaluated in either order and both do not need to be addressed if the defendant fails to make a showing on either one. *Id.* at 697. Unless the defendant can show both prongs, the conviction cannot be said to be the result of a breakdown in the adversary process that made the outcome unreliable. *Id.* at 687.

¶ 28 There are circumstances, however, that are so likely to prejudice the defendant that the cost of litigating their impact in a particular case is unjustified. *United States v. Cronic*, 466 U.S. 648, 658 (1984). Prejudice may be presumed in a narrow range of circumstances. *Young*, 220 Ill. App. 3d at 107. "Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *Strickland*, 466 U.S. at 692. When counsel completely fails to subject the prosecution's case to meaningful adversarial testing, there is a denial of the right to counsel that makes the adversary process presumptively unreliable. *Young*, 220 Ill. App. 3d at 107 (citing *Cronic*, 466 U.S. at 659).

¶ 29 Mr. Macon argues that defense counsel provided ineffective assistance of counsel under *Cronic*. He claims that defense counsel failed to meaningfully challenge the State's case against him for possession of firearm ammunition and that until the court reminded defense counsel after

his closing argument, defense counsel had neither prepared nor presented a defense case for the firearm ammunition charge.

¶ 30    The United States Supreme Court has noted just how infrequently a proceeding's circumstances will justify a presumption of ineffectiveness when reviewing *Cronic* itself, where it reversed a ruling that found the performance of an inexperienced, underprepared attorney in a complex mail fraud trial was prejudicially inadequate. *Florida v. Nixon*, 543 U.S. 175, 190 (2004) (citing *Cronic*, 466 U.S. at 662, 666). The Seventh Circuit Court of Appeals has similarly noted that courts rarely apply *Cronic,* and has emphasized that "only non-representation, not poor representation, triggers a presumption of prejudice." *People v. Cherry*, 2016 IL 118728, ¶ 26 (quoting *Miller v. Martin*, 481 F.3d 468, 473 (7th Cir. 2007)). *Cronic* applies only if defense counsel fails to contest any portion of the prosecution's case. *Cherry*, 2016 IL 118728, ¶ 26 (citing *United States v. Holman,* 314 F.3d 837, 839 n.1 (2002)). *Strickland* is the more appropriate test when counsel mounts a partial defense. *Id.*

¶ 31    Mr. Macon cites to *People v. Hattery*, 109 Ill. 2d 449, 464 (1985), where *Cronic* was applied to a case where the defense counsel stated to the jury during opening statements that the defendant was guilty and the only issue was whether the defendant should receive the death penalty. However, "it is not *per se* ineffective assistance of counsel 'whenever the defense attorney concedes his client's guilt to offenses in which there is overwhelming evidence of guilt but fails to show on the record consent by defendant.' " *People v. Elam*, 294 Ill. App. 3d 313, 320 (1998) (quoting *People v. Johnson,* 128 Ill.2d 253, 269 (1989)). In *Elam*, the court found that while defense counsel conceded the defendant's guilt on three of the five charges against him, he did not concede guilt to two of those charges and therefore, "did not entirely fail to subject the prosecution's case to meaningful adversarial testing." *Elam*, 294 Ill. App. 3d at 321. In Mr.

Macon's case, his defense counsel never conceded his guilt at any point.

¶ 32    Mr. Macon's defense counsel made an opening statement, closing argument, and cross-examined both of the State's witnesses on the possession of a firearm charge. Defense counsel did not concede Mr. Macon's guilt on either of the charges and eventually asked Officer Hernandez if he knew whether the recovered ammunition was tested with the recovered firearm or if a firearm worksheet was worked up in the case. Additionally, defense counsel addressed the firearm ammunition in closing arguments after prompting from the trial court. Therefore, Mr. Macon's argument that defense counsel was ineffective under *Cronic* by failing to challenge the State's case against him for possession of firearm ammunition is without merit. See *People v. Boots*, 2022 IL App (2d) 200640, ¶ 34 ("as defense counsel did not concede the defendant's guilt, cross-examined the witnesses, and argued in closing that the defendant was not guilty, the defendant's argument *** is without merit.")

¶ 33    Mr. Macon argues that if *Cronic* does not apply, then defense counsel was ineffective under *Strickland*. He contends that if defense counsel had conducted any pretrial investigation, he could have uncovered exculpatory evidence that Mr. Macon alleges existed and Mr. Macon could have testified on his own behalf. Mr. Macon claims that defense counsel conducted no pretrial investigation, preparation, trial strategy, or any representation on count II at trial, which resulted in his conviction on possession of firearm ammunition.

¶ 34    Ineffective assistance has been found where defense counsel failed to adequately investigate and develop an available defense. *People v. Garza*, 180 Ill. App. 3d 263, 269 (1989) (citing *People v. Wright*, 111 Ill. 2d 18, 31 (1986)). Counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.

¶ 35    We have already rejected Mr. Macon's claim that defense counsel failed to provide *any* representation on the possession of firearm ammunition charge. However, even if we accepted the rest of Mr. Macon's contentions, he has failed to show prejudice under *Strickland*.

¶ 36    A defense counsel's failure to investigate will usually not support a claim of ineffective assistance of counsel unless the defendant can show on appeal what additional evidence his trial counsel could have produced from the investigation with some specificity. *Young*, 220 Ill. App. 3d at 109. Mr. Macon has not stated what exculpatory evidence could have been uncovered. Additionally, the trial court stated:

> "[A]s to the firearm ammunition, I'm satisfied. The officer testified in a sense I asked that question, but the officer called it ammunition.
>
> He's been a police officer for five and a half years. He said based upon his experience it's ammunition. It was 9mm ammunition. The State has to prove any ammunition and it was in a backpack that [Mr. Macon] was wearing with his identification. There is no doubt that this was possession of firearm ammunition."

¶ 37    In this case, looking at the totality of the evidence, we cannot find that the errors complained of are sufficient to undermine our confidence in the verdict. See *People v. McCarter*, 385 Ill. App. 3d 919, 936 (2008). Therefore, we reject Mr. Macon's ineffective assistance of counsel claim.

¶ 38                    II. Second Amendment and Illinois Constitution

¶ 39    Mr. Macon argues, for the first time on appeal, that his conviction for unlawful possession of firearm ammunition should be reversed because section 24-1.1(a) of the UUWF statute violates the second amendment of the United States Constitution and the Illinois Constitution on its face and as applied to him. Mr. Macon contends that section 24-1.1(a) cannot satisfy the two-part test

the Supreme Court set forth in *Bruen* because there is no historical analogue of a permanent, status-based revocation of the right to keep and bear arms during the founding era.

¶ 40    A constitutional challenge to a statute may be either facial or as applied. *People v. Burns*, 2024 IL App (4th) 230428, ¶ 11. "A facial challenge requires the challenging party to show that the statute is unconstitutional under any set of facts, while an as-applied challenge depends on the particular facts and circumstances of the party." *Id.* ¶ 11.

¶ 41                                A. *Facial Challenge*

¶ 42    First, we acknowledge that although Mr. Macon did not raise this issue before the trial court, a party may challenge the constitutionality of a statute at any time. *In re M.I.*, 2013 IL 113776, ¶ 39 (citing *People v. McCarty*, 223 Ill. 2d 109, 122 (2006)). Statutes are presumed constitutional, and the burden is on the party challenging the statute "to clearly establish any constitutional invalidity." *People v. Baker*, 2023 IL App (1st) 220328, ¶ 36 (quoting *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 334 (2006)). This court must construe the statute so as to uphold its validity and constitutionality, whenever reasonably possible. *People v. Thompson*, 2025 IL 129965, ¶ 13. The constitutionality of a statute is an issue that we review *de novo*. *Baker*, 2023 IL App (1st) 220328, ¶ 36.

¶ 43    The second amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. The United States Supreme Court has recognized that the second and fourteenth amendments protect the right of ordinary, "law-abiding" citizens to possess a handgun inside and outside of the home for self-defense. (Internal quotations omitted.) *Burns*, 2024 IL App (4th) 230428, ¶ 14 (citing *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 8-9 (2022); *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008); *McDonald v. City of Chicago*, 561 U.S.

742, 791 (2010)).

¶ 44    In *Bruen*, the Court created a two-part test for courts evaluating the constitutionality of firearm regulations under the second amendment. *Bruen*, 597 U.S. at 24. A court must first determine whether the defendant's conduct is covered by the plain text of the second amendment. *Id.* at 24; *People v. Travis*, 2024 IL App (3d) 230113, ¶ 24. If so, then the government must justify the regulation by showing that it is consistent with the nation's history and tradition of firearm regulation. *Bruen*, 597 U.S. at 24. Only with that justification may a court decide that the defendant's conduct is outside the second amendment's "unqualified command." *Bruen*, 597 U.S. at 24 (quoting *Konigsberg v. State Bar of California*, 366 U.S. 36, 50, n.10 (1961)).

¶ 45    Since *Bruen* was decided, this court has heard dozens of claims similar to those raised by Mr. Macon that challenge the constitutionality of different firearm regulations, including the UUWF statute. These claims have been consistently rejected on two grounds: (1) we have found that convicted felons are not a part of "the people" protected by the second amendment and (2) we have found that the permanent disarmament of convicted felons is consistent with this nation's historical tradition of firearm regulation.

¶ 46    Relying on the test announced in *Bruen*, Mr. Macon argues that he is among "the people" referenced in the text of the second amendment and that his current conduct of possessing firearm ammunition is covered by the amendment's plain text and therefore presumptively constitutional.

¶ 47    In *Baker*, the court found that *Bruen* made clear that its two-part test applied only to "law-abiding citizens" and not to felons like the defendant. *Baker*, 2023 IL App (1st) 220328, ¶ 37 (citing *Bruen*, 597 U.S. at 71). In *Baker*, the defendant raised an as-applied constitutional challenge to section 24-1.1(a), relying on *Bruen*. *Baker*, 2023 IL App (1st) 220328, ¶ 37. Finding that *Bruen* does not apply to convicted felons, the court rejected the challenge. *Id.* The court noted that the

phrase "law-abiding citizens" was used 18 times when referring to the right to possess firearms under the second amendment in the majority opinion and concurrences in *Bruen*. *Id.* The court then determined that the defendant, who was a felon, was not a "law-abiding" citizen to which *Bruen* applied. *Id.*

¶ 48     Mr. Macon argues this court should apply the reasoning in *People v. Brooks*, 2023 IL App (1st) 200435, instead of *Baker*. In *Brooks*, another panel of this court reviewed an as-applied challenge to the armed habitual criminal statute. 2023 IL App (1st) 200435, ¶ 64. The court found that *Bruen*'s first step was to ask only whether the plain text of the second amendment covers "an individual's *conduct*." (Emphasis in original and internal quotation marks omitted.) *Id.* ¶ 89 (quoting *Bruen*, 597 U.S. at 17). The court noted that whether the defendant was a felon was irrelevant at this stage of the analysis because this initial step does not "contemplate the actor or the subject." *Id.* ¶ 89. The court concluded that the second step of *Bruen*—the historical analysis— was the proper avenue to evaluate how the defendant's status as a felon might impact his second amendment right to possess a firearm. *Id.*

¶ 49     While we find the analysis in *Brooks* well-articulated, we instead choose to join the majority of the appellate court on this issue, which has elected to follow the reasoning in *Baker* and found that *Bruen* does not apply to felons because they are not included in "the people" protected by the second amendment. See, *e.g.*, *People v. Boss*, 2025 IL App (1st) 221855, ¶ 33 ("*** we join with the majority of panels who have examined the holdings in *Baker* and *Brooks* and have elected to follow *Baker* and agree that the second amendment does not apply to a felon's firearm possession."); *People v. Mobley*, 2023 IL App (1st) 221264, ¶ 27 (*Baker* held that a defendant "could not invoke *Bruen* because the test only applies to *** 'law-abiding citizens,'***. This conception is consistent with the statement in *Heller* that felon bans are 'presumptively

lawful.' "); *Burns*, 2024 IL App (4th) 230428, ¶ 21 ("As a felon, defendant, by definition, is not a law-abiding citizen. Thus, defendant cannot show that his conduct was presumptively protected by the second amendment ****"). Therefore, we find that Mr. Macon's conduct of possessing firearm ammunition as a felon is not covered by the plain text of the second amendment.

¶ 50    Even if we did follow the reasoning in *Brooks*, we would still find that Mr. Macon's facial challenge fails under the second step of *Bruen*. Under the second step, the government has the burden to show that the regulation is consistent with the nation's tradition of firearm regulation. *Bruen*, 597 U.S. at 27. The State must identify "historical precedent" from before, during, and even after the founding era that demonstrates a comparable tradition of firearm regulation. (Internal quotations omitted.) *Id.* (quoting *Heller*, 554 U.S. at 631).

¶ 51    Mr. Macon argues that there is no relevant historical analogue to section 24-1.1(a)'s permanent disarmament of people based on nothing more than their conviction of any felony. Section 24-1.1(a) provides, in pertinent part:

"It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2022).

¶ 52    The Supreme Court has made clear in several opinions that its holdings should not cast doubt on the "prohibitions on the possession of firearms by felons." See *Heller*, 554 U.S. at 626; see also *United States v. Rahimi*, 602 U.S. 680, 699 (2024) ("In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.' ").

¶ 53 Additionally, in *Brooks*, the court determined that although the defendant's actions were presumptively protected under the second amendment, his constitutional objection still fails after examining the country's historical tradition of regulating firearms. *Brooks*, 2023 IL App (1st) 200435, ¶ 90. The *Brooks* court concluded that the historical record from the founding era as well as Supreme Court precedent supported the legislature's ability to prohibit firearm possession by people who have "demonstrated disrespect for legal norms of society." (Internal quotations omitted.) *Id.* ¶ 100 (quoting *United States v. Jackson*, 69 F.4th 495, 504 (8th Cir. 2023)).

¶ 54 Other districts and divisions of this court have applied the analysis in *Brooks* and found that section 24-1.1(a) is not unconstitutional on its face. See, *e.g.*, *People v. Martinez*, 2024 IL App (2d) 230305-U, ¶ 49 ("*** even if the text of the second amendment was to be construed as presumptively protecting felons, the [UUWF] statute is consistent with this Nation's historical tradition of firearms regulation."); *People v. Muhammad*, 2023 IL App (1st) 230121-U, ¶ 22 ("Based on our reading of the *Brooks* court's historical analysis, we find that the history on which *Brooks* relies finds that categorical prohibitions on felons' possession of firearms are 'consistent with the Nation's historical tradition of firearm regulation' under *Bruen's* second prong ***").

¶ 55 Illinois courts have consistently rejected facial challenges to statutes, including section 24-1.1(a), that disarm felons. We find no reason to depart from the clearly established precedent here. Therefore, we reject Mr. Macon's facial challenge to section 24-1.1(a).

¶ 56 Mr. Macon argues that even if we find section 24-1.1(a) comports with the second amendment, that we should nonetheless find that the statute violates the Illinois Constitution. He contends that the constitutional text and records of the 1970 Constitutional Convention show that the Illinois Constitution's reference to "the individual citizen" in Article I, Section 22, is meant to be broader than the second amendment's reference to "the People."

¶ 57     The Illinois Constitution states that "[s]ubject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. Const. 1970, art. I, § 22. The Illinois Supreme Court has noted that this section is not the exact same as the second amendment of the United States Constitution as it "adds the words '[s]ubject only to the police power,' omits prefatory language concerning the importance of a militia, and substitutes 'the individual citizen' for 'the people.' " *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 491 (1984).

¶ 58     In *Kalodimos*, our supreme court concluded that the phrase "the individual citizen" was intended to "broaden the scope of the right to arms from a collective one applicable only to weapons traditionally used by a regulated militia [citation] to an individual right covering a wider variety of arms." *Kalodimos*, 103 Ill. 2d at 491. However, the court also found that the plain language of the section "clearly leaves the right to bear any type of arms subject to the police power." *Id.* at 493. The court recognized that the police power includes laws that restrain or prohibit anything harmful to the welfare of the people. *Id.* at 496. Therefore, the court explained, the right to arms secured by the Illinois Constitution is subject "to substantial infringement in the exercise of the police power even though it operates on the individual level." *Id.* at 509.

¶ 59     Courts have found that even if felons are included as an "individual citizen" that, the police power allows the government a high degree of control over the use of firearms. See *Travis*, 2024 IL App (3d) 230113, ¶ 42 (citing *Kalodimos*, 103 Ill. 2d at 491-92) ("we cannot ignore our supreme court's observation that the inclusion of the prefatory clause '[s]ubject only to the police power' was intended to grant the government an 'extraordinary degree of control' over the use of firearms."); see also *Burns*, 2024 IL App (4th) 230428, ¶ 27 (finding that the police power includes the power to regulate certain aspects of firearm possession and ownership, including the "longstanding prohibitions on the possession of firearms by felons.")

¶ 60    Mr. Macon argues that assuming section 24-1.1(a) violates the second amendment, that the text of the Illinois Constitution cannot further empower the Illinois legislature to infringe on the second amendment rights of its citizens. Mr. Macon has not explained how section 24-1.1(a) would not fall under the legislature's police power. Having concluded that section 24-1.1(a) comports with the second amendment, we see no conflict between the second amendment and the Illinois Constitution and therefore reject Mr. Macon's argument. See *Travis*, 2024 IL App (3d) 230113, ¶ 42 ("defendant presents no compelling argument that Illinois has elected to impose greater protections [than the second amendment], nor does our independent review find this to be the case.") Accordingly, we hold that section 24-1.1(a) does not violate article I, section 22, of the Illinois Constitution.

¶ 61                    B. *As-Applied Challenge*

¶ 62    Lastly, Mr. Macon argues that if this court rejects his facial challenge to section 24-1.1(a), we should nonetheless find the UUWF statute unconstitutional under the second amendment and the Illinois Constitution as applied to Mr. Macon.

¶ 63    Typically, a defendant must raise an as-applied constitutional challenge at trial, so the record can be developed as to the specific facts and circumstances of the claim. *Brooks*, 2023 IL App (1st) 200435, ¶ 57 (citing *People v. Thompson*, 2015 IL 118151, ¶ 37). Mr. Macon concedes that he did not raise his as-applied constitutional challenge at the trial court but argues the record is sufficiently developed for us to review his claim. Having reviewed the record, we agree.

¶ 64    Mr. Macon points out that his constitutional challenge is premised on the nonviolent nature of his previous conviction, which is part of the record in the Pre-Sentence Investigation report and that the nature of his conduct in this case was described in trial testimony. See *Travis*, 2024 IL App (3d) 230113, ¶ 18 ("The record contains defendant's criminal history, and the parties do not

dispute its accuracy."); *Brooks*, 2023 IL App (1st) 200435, ¶ 59 ("the defendant's as-applied challenge is based on facts already in the record, *i.e.*, the defendant's simple possession of the firearm and the nonviolent nature of his two prior predicate felony offenses.) Therefore, upon review of the record, we conclude that Mr. Macon's claim is properly raised and may be reviewed on the merits. *Brooks*, 2023 IL App (1st) 200435, ¶ 62. Our review of whether section 24-1.1(a) of the UUWF statute is constitutional as applied to Mr. Macon is *de novo*. *Id.* ¶ 64.

¶ 65    Mr. Macon argues that the State cannot show any historical tradition of prohibiting a non-dangerous convicted felon like him from possessing ammunition.

¶ 66    Statutes that disarm felons, including nonviolent felons, are presumptively constitutional. See *Bruen*, 597 U.S. 1, 80-81 (2022) (Kavanaugh, J., concurring, joined by Roberts, C.J.) (" '*** [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons"); *McDonald*, 561 U.S. at 786 ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by 'felons' ").

¶ 67    Courts of various jurisdictions, including Illinois, that have dealt with this issue have found in the vast majority of cases that statutes prohibiting felons from possessing weapons are constitutional as applied to nonviolent felons under *Bruen*. See, *e.g.*, *Brooks*, 2023 IL App (1st) 200435, ¶ 100 ("Since the defendant in the instant case was twice convicted of a felony, albeit nonviolent ones, he is not a law-abiding citizen, and the armed habitual criminal statute *** is constitutional as applied to him"); *Travis*, 2024 IL App (3d) 230113, ¶ 37 ("Even if defendant had been convicted of only nonviolent felonies, we would reject defendant's invitation to second-guess the legislature's determination of which crimes merit felony status and, consequently, disarmament"); *People v. Whitehead*, 2024 IL App (1st) 231008-U, ¶ 84 (finding the second

amendment does not distinguish between violent and nonviolent felonies, therefore nonviolent felons may be constitutionally disarmed); *People v. Leonard*, 2024 IL App (4th) 230413-U, ¶ 15 ("By incurring a felony conviction, even a nonviolent felony conviction, a citizen forever loses the constitutional right to have a firearm for the defense of his person and his house").

¶ 68   We find that the regulated conduct under section 24-1.1(a) falls beyond the scope of the second amendment because it only reaches "law-abiding citizens." See *Baker*, 2023 IL App (1st) 220328, ¶ 37 ("The *Bruen* Court could not have been more clear that its newly announced test applied only to laws that attempted to regulate the gun possession of 'law-abiding citizens,' and not felons like defendant."); *Boss*, 2025 IL App (1st) 221855, ¶ 33 (finding that the defendant's constitutional challenge fails because "the second amendment does not apply to him as he is not a law-abiding citizen but, rather, a felon."). Therefore, section 24-1.1(a) is constitutional under the second amendment as applied to Mr. Macon.

¶ 69   Regarding Mr. Macon's contention that section 24-1.1(a) violates the Illinois constitution as applied to him, we have already concluded that laws that restrain or prohibit anything harmful to the welfare of the people are a part of the legislature's police power. *Kalodimos*, 103 Ill. 2d at 496. For the reasons previously discussed when addressing Mr. Macon's facial challenge, we similarly find that the section 24-1.1(a) is a proper exercise of the State's police power as applied to Mr. Macon, who is a convicted felon. *Burns*, 2024 IL App (4th) 230428, ¶ 47.

¶ 70   Accordingly, we hold that section 24-1.1(a) of the UUWF statute is constitutional under both the second amendment and Illinois constitution as applied to Mr. Macon and affirm his conviction.

¶ 71                                       CONCLUSION

¶ 72   For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 73    Affirmed.

¶ 74    JUSTICE OCASIO, specially concurring:

¶ 75    I concur in the court's decision and analysis, but I do so with reservations. The requirement of the accused to be represented by competent counsel is axiomatic. The sixth amendment guarantees every criminal defendant the right to counsel. Here, during these proceedings, defense counsel made a significant admission on the record, acknowledging that he had forgotten the State was actively pursuing count 2, which pertained to the ammunition charge. This oversight is particularly troubling, as it suggests a lapse in the defense's awareness of the specific charges being addressed in court.

¶ 76    Nevertheless, I agree that counsel's error did not result in no representation at all, which means that we cannot presume that counsel's serious mistake resulted in prejudice. Under applicable law, that means Mr. Macon has the burden of showing that he was prejudiced by the error, which he does not do on this record. Although I agree that this result is correct under existing law, I cannot help but notice that we are saying to Mr. Macon that he received a presumptively fair trial even though his attorney was not aware of all the charges against him—and that, to my mind, undermines the legitimacy of the process by which he was convicted as a practical matter, if not a legal one.